**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHERN DIVISION**

| | |
|---|---|
| _____ ) | |
| **SOUTHWIRE COMPANY, LLC** ) | |
| ) | Civil Action No. _____ |
| Plaintiff, ) | |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| **INNOVATIVE TOOL LLC,** ) | |
| **DAVID JORDAN, and** ) | |
| **MICHAEL JORDAN** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## COMPLAINT

Plaintiff Southwire Company, LLC ("Southwire") brings this action against

Innovative Tool LLC ("iToolco"), Michael Jordan, and David Jordan ("Jordan

Brothers") (collectively, "Defendants"). In support of this action, Plaintiff alleges as

follows:

## NATURE OF ACTION

1.      This is an action against Defendants for willfully infringing

Southwire's U.S. Patent Nos. 5,984,273 ("the '273 patent"), 6,286,815 ("the '815

patent") and 6,682,050 ("the '050 patent") (collectively referred to as "the Patents-in-

Suit"), infringing Southwire's trade dress, and violating non-solicitation

agreements.

## PARTIES

2.      Plaintiff Southwire Company, LLC is a Delaware company with its

principal place of business at One Southwire Drive, Carrollton, Georgia, 30119.

3.     Upon information and belief, Defendant Innovative Tool LLC is a Tennessee limited liability company registered with the Tennessee Secretary of State doing business as "iToolco" with its principal place of business at 100 Meco Lane, Oak Ridge, Tennessee, 37830.

4.     Upon information and belief, Defendant Michael Jordan, an individual who resides in Tennessee and is domiciled in Tennessee, is the vice-president of iToolco.

5.     Upon information and belief, Defendant David Jordan, an individual who resides in Tennessee and is domiciled in Tennessee, is the president of iToolco.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a) over the federal patent infringement claims and 15 U.S.C. § 1125(a) over the trade dress claims.

7.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 over claims arising under state contract laws; the state law claims form part of the same case or controversy.

8.     This Court has personal jurisdiction over iToolco because iToolco's principal place of business is in Tennessee and iToolco is registered in Tennessee.

9.     Moreover, iToolco products are distributed in Tennessee and intended for sale, offer for sale, and use within Tennessee.

10.     This Court has personal jurisdiction over the Jordan Brothers as they

2

are residents of Tennessee, and thus subject to the jurisdiction of the courts in Tennessee.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants have committed acts of patent infringement, trade dress infringement, and/or breach of contract in this district and Defendants are subject to personal jurisdiction in this district.

## BACKGROUND

12.    Southwire is a leading manufacturer of wire, cable, and associated products used in the distribution and transmission of electricity.  Southwire has developed and acquired several groundbreaking technologies related to tools for pulling wires and/or cables through conduits.

13.    The United States Patent and Trademark Office ("USPTO") duly and legally issued the '273 patent, entitled "Wire Puller" on November 16, 1999.  A true and correct copy of the '273 patent is attached as Exhibit A.  Southwire owns the '273 patent by assignment.

14.    The USPTO duly and legally issued the '815 patent, entitled "Wire Puller" on September 11, 2001.  A true and correct copy of the '815 patent is attached as Exhibit B.  Southwire owns the '815 patent by assignment.

15.    The USPTO duly and legally issued the '050 patent, entitled "Wire Puller" on January 27, 2004.  A true and correct copy of the '050 patent is attached as Exhibit C.  Southwire owns the '050 patent by assignment.

16.    Southwire sells cable pullers that embody the '273, '815, and '050

inventions throughout the United States. Specifically, Southwire sells and marks its XD10, M6K, M6K-M, M3K, M3K-M, M10K, and PI10K pullers with the '273, '815, and '050 patents.

17.     In 2009, Southwire acquired the assets of Maxis LLC ("Maxis"), a company specializing in developing tools and equipment used in installing and managing electrical wire/cable products. The Jordan Brothers were Maxis employees, and they both joined Southwire's product development team at that time, focused on the electrical contractor market.

18.     Michael Jordan signed a "Non-Solicitation and Non-Disclosure Agreement" ("Agreement") with Southwire effective as of September 18, 2009. The Agreement contains certain restrictive covenants in favor of Southwire which are designed to protect the legitimate business interests of Southwire. A copy of this Agreement is attached as Exhibit D.

19.     Among other restrictions, paragraph 2 of the Agreement prohibited Michael Jordan soliciting Southwire's customers, vendors, contractors, or distributors with whom he had a sales or business relationship for a period of two years.

20.     David Jordan signed a "Non-Solicitation and Non-Disclosure Agreement" ("Agreement") with Southwire effective as of September 18, 2009. The Agreement contains certain restrictive covenants in favor of Southwire which are designed to protect the legitimate business interests of Southwire. A copy of this Agreement is attached as Exhibit E.

21.     Among other restrictions, paragraph 2 of the Agreement prohibited David Jordan from soliciting Southwire's customers, vendors, contractors, or distributors with whom he had a sales or business relationship for a period of two years.

22.     During their employment, the Jordan Brothers were involved in various high-level strategy meetings with regard to new product ideas, vendors, potential industry partnerships, and distribution strategy and performance.

23.     In September, 2010 after a high-level meeting with a leading hand-tool manufacturer, the Jordan Brothers abruptly resigned from Southwire without notice.

24.     Following their resignations, the Agreements remained in effect, as did the Jordan Brothers' obligations under the Agreements.

25.     Upon information and belief, in 2011 the Jordan Brothers formed iToolco, started directly competing with Southwire, and began marketing tool products including Rope Tender, Tough Blade Step Bit, Cable Glides, Tough Blade Lineman Pliers, Real Jacks, and Cannon Cable Pullers to electrical industry manufacturers.

26.     Upon information and belief, the Jordan Brothers started sending marketing emails with the products described above to Southwire's agent representatives and distributors at least as of March, 2012 in violation of the terms set forth in the Agreements signed by the Jordan Brothers in 2009.

27.     In view of the two-year restriction on solicitation after the end of their

employment with Southwire, the Jordan Brothers were not permitted to solicit any of Southwire's customers, licensees, licensors, vendors, contractors, or distributors with whom they had a business relationship until at least September, 2012.

28.    Due to the similarity of iToolco's products with Southwire's products and the use of the "Maxis" name in iToolco's advertisements, upon information and belief, distributors were confused as to the affiliation of iToolco with Southwire and its acquired Maxis Tools.  Upon information and belief, at least one distributor mistakenly believed that iToolco was a sister company of Southwire/Maxis.

29.    The duplicate nature of iToolco's products compared to Southwire's patented technology can be seen from comparison with Southwire's products, with representative samples shown below for 10K pullers:



**Southwire XD10 Puller**          **Accused iToolco Cannon 10K**

30.    From its inception, iToolco has systematically copied Southwire's products and inventions and blurred the distinction between the Southwire/Maxis and iToolco products.  For example, in designing the Cannon 10K puller, iToolco and the Jordan Brothers used a Milwaukee Dymodrill that is virtually identical to

6

the drill used by Southwire. Similarly, in designing the Cannon 6K puller, iToolco and the Jordan brothers used the identical Milwaukee Superhawg 168020 drill that is used by Southwire to power the puller. The only insubstantial difference between the drills is that iToolco used a removable insert for the chuck.

31. Upon information and belief, during the non-solicitation period the Jordan brothers also contacted the suppliers of the gear boxes used on the Southwire/Maxis pullers and included the identical gear boxes in the iToolco wire pullers as were used on the Southwire/Maxis pullers when iToolco came to market. Upon information and belief, that supplier information was not known to the public.

32. In designing a competing conduit spacer tool, rather than coming up with a new design, the Jordan Brothers and iToolco substantially copied the distinctive look and layout of the Southwire marking tool in their original product. No other competitive products remotely resemble these tools:

 

**Southwire Marksman®          Accused iToolco Center
Conduit Spacer                    Point Layout Tool**

33.     Months after Southwire complained about this misappropriation of trade dress, Defendants implicitly conceded that they were impermissibly using Southwire's trade dress and voluntarily changed their Center Point layout tool.

34.     The Jordans and iToolco have further caused confusion in the marketplace as to the source of their products by statements made to potential customers.  These statements have made it unclear whether Southwire or iToolco is associated with the Maxis brand.

35.     As a specific example, not long after the Jordan Brothers and iToolco introduced their pullers into the marketplace in 2012, one of Southwire's customers contacted Southwire and asked whether iToolco was a sister company.

36.     By virtue of their conduct, the Jordan Brothers have directly violated covenants in the Agreements signed with Southwire.  In addition, the Jordan Brothers have improperly used Southwire's confidential information, including information regarding suppliers, sourcing, distributors, and information regarding Southwire business to unfairly compete with Southwire.  Through patent infringement, trade dress infringement, and breach of non-solicitation agreements, and upon information and belief, iToolco has realized millions of dollars in revenue over the last four years, and thus caused Southwire to lose millions of dollars in revenue.  Upon information and belief, as a result of the above actions, iToolco was able to launch products directly competing with Southwire years before they otherwise could.  Southwire has been damaged as a direct and proximate result of

8

Defendants' aforementioned activities.

## COUNT I
### (Direct Infringement of the '273 Patent)

37.     Southwire incorporates the allegations set forth in the paragraphs 1-36 of this Complaint as if fully rewritten herein.

38.     Defendants have been and are now making, using, selling, offering for sale, importing into, or distributing within the United States wire pullers which directly infringe either literally or under the doctrine of equivalents one or more claims of the '273 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, in violation of 35 U.S.C. § 271(a).

39.     Attached as Exhibit F is one non-limiting explanation of how a representative product corresponds to the language of independent claim 10 of the '273 patent.  Exhibit F is intended to be exemplary only.  It does not limit the claims of the '273 patent asserted against Defendants or the products accused of infringement.

40.     Defendants' infringement of the '273 patent has been and continues to be willful and without authority or license from Southwire.

41.     Defendants' acts of infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from iToolco the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

42.     Southwire has suffered irreparable harm by Defendants' infringement of the '273 patent and will continue to suffer irreparable harm in the future unless

9

and until Defendants are enjoined from infringing the '273 patent.

43.     Upon information and belief, Defendants will continue to infringe the '273 patent unless and until Defendants are enjoined by this Court.

## COUNT II
## (Direct Infringement of the '815 Patent)

44.     Southwire incorporates the allegations set forth in the paragraphs 1-36 of this Complaint as if fully rewritten herein.

45.     Defendants have been and are now making, using, selling, offering for sale, importing into, or distributing within the United States wire pullers which directly infringe either literally or under the doctrine of equivalents one or more claims of the '815 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, in violation of 35 U.S.C. § 271(a).

46.     Attached as Exhibit G is one non-limiting explanation of how a representative product corresponds to the language of independent claim 19 of the '815 patent.  Exhibit G is intended to be exemplary only.  It does not limit the claims of the '815 patent asserted against Defendants or the products accused of infringement.

47.     Defendants' infringement of the '815 patent has been and continues to be willful and without authority or license from Southwire.

48.     Defendants' acts of infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from iToolco the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

10

49. Southwire has suffered irreparable harm by Defendants' infringement of the '815 patent and will continue to suffer irreparable harm in the future unless and until iToolco is enjoined from infringing the '815 patent.

50. Upon information and belief, Defendants will continue to infringe the '815 patent unless and until Defendants are enjoined by this Court.

## COUNT III
## (Direct Infringement of the '050 Patent)

51. Southwire incorporates the allegations set forth in the paragraphs 1-36 of this Complaint as if fully rewritten herein.

52. Defendants have been and are now making, using, selling, offering for sale, importing into, or distributing within the United States wire pullers which directly infringe either literally or under the doctrine of equivalents one or more claims of the '050 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, in violation of 35 U.S.C. § 271(a).

53. Attached as Exhibit H is one non-limiting explanation of how a representative product corresponds to the language of claims 1, 5, 15, and 24 of the '050 patent. Exhibit H is intended to be exemplary only. It does not limit the claims of the '050 patent asserted against Defendants or the products accused of infringement.

54. Defendants' infringement of the '050 patent has been and continues to be willful and without authority or license from Southwire.

55. Defendants' acts of infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from Defendants

11

the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

56. Southwire has suffered irreparable harm by Defendants' infringement of the '050 patent and will continue to suffer irreparable harm in the future unless and until Defendants are enjoined from infringing the '050 patent.

57. Upon information and belief, Defendants will continue to infringe the '050 patent unless and until Defendants are enjoined by this Court.

## COUNT IV
## (Indirect Infringement of the '273 Patent)

58. Southwire incorporates the allegations set forth in paragraphs 1-43 of this Complaint as if fully rewritten herein.

59. Defendants sell wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for sale, offer for sale, and use in pulling cable through conduits.

60. Upon information and belief, these third parties have been and are now selling, offering for sale, and using these wire pullers so as to directly infringe either literally or under the doctrine of equivalents one or more claims of the '273 patent, in violation of 35 U.S.C. § 271(a).

61. Upon information and belief, Defendants have been and are now inducing such third parties', and contributing to such third parties', direct infringement of at least one claim of the '273 patent, in violation of 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c).

62. Upon information and belief, Defendants induce such third parties to

12

directly infringe at least one claim of the '273 patent.

63. Upon information and belief, Defendants are aware of the '273 patent, at least as of the date of the filing of this Complaint.

64. Upon information and belief, Defendants have knowledge and/or intent that selling wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for sale, offer for sale, and use in pulling cable through conduits constitutes infringement of at least one claim of the '273 patent.

65. Upon information and belief, the wire pullers which directly infringe one or more claims of the '273 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, have no substantial non-infringing uses and are especially made or adapted for use in accordance with the '273 patent.

66. Defendants' indirect infringement of the '273 patent has been and continues to be willful.

67. Defendants' acts of indirect infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from Defendants the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

68. Southwire has suffered irreparable harm by Defendants' indirect infringement of the '273 patent and will continue to suffer irreparable harm in the future unless and until Defendants are enjoined from infringing the '273 patent.

69. Upon information and belief, Defendants will continue to indirectly infringe the '273 patent unless and until Defendants are enjoined by this Court.

## COUNT V
## (Indirect Infringement of the '815 Patent)

70.    Southwire incorporates the allegations set forth in paragraphs 1-36 and 44-50 of this Complaint as if fully rewritten herein.

71.    Defendants sell wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for sale, offer for sale, and use in pulling cable through conduits.

72.    Upon information and belief, these third parties have been and are now selling, offering for sale, and using these wire pullers so as to directly infringe either literally or under the doctrine of equivalents one or more claims of the '815 patent, in violation of 35 U.S.C. § 271(a).

73.    Upon information and belief, Defendants have been and are now inducing such third parties', and contributing to such third parties', direct infringement of at least one claim of the '815 patent, in violation of 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c).

74.    Upon information and belief, Defendants induce such third parties to directly infringe at least one claim of the '815 patent.

75.    Upon information and belief, Defendants are aware of the '815 patent, at least as of the date of the filing of this Complaint.

76.    Upon information and belief, Defendants have knowledge and/or intent that selling wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for sale, offer for sale, and use in pulling cable

through conduits constitutes infringement of at least one claim of the '815 patent.

77. Upon information and belief, the wire pullers which directly infringe one or more claims of the '815 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, have no substantial non-infringing uses and are especially made or adapted for use in accordance with the '815 patent.

78. Defendants' indirect infringement of the '815 patent has been and continues to be willful.

79. Defendants' acts of indirect infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from Defendants the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

80. Southwire has suffered irreparable harm by Defendants' indirect infringement of the '815 patent and will continue to suffer irreparable harm in the future unless and until Defendants are enjoined from infringing the '815 patent.

81. Upon information and belief, Defendants will continue to indirectly infringe the '815 patent unless and until Defendants are enjoined by this Court.

## COUNT VI
### (Indirect Infringement of the '050 Patent)

82. Southwire incorporates the allegations set forth in paragraphs 1-36 and 51-57 of this Complaint as if fully rewritten herein.

83. Defendants sell wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for sale, offer for sale, and use in pulling cable through conduits.

15

84.     Upon information and belief, these third parties have been and are now selling, offering for sale, and using these wire pullers so as to directly infringe either literally or under the doctrine of equivalents one or more claims of the '050 patent, in violation of 35 U.S.C. § 271(a).

85.     Upon information and belief, Defendants have been and are now inducing such third parties', and contributing to such third parties', direct infringement of at least one claim of the '050 patent, in violation of 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c).

86.     Upon information and belief, Defendants induce such third parties to directly infringe at least one claim of the '050 patent.

87.     Upon information and belief, Defendants are aware of the '050 patent, at least as of the date of the filing of this Complaint.

88.     Upon information and belief, Defendants have knowledge and/or intent that selling wire pullers including but not necessarily limited to the Cannon 6K and 10K wire pullers to third parties for use in pulling cable through conduits constitutes infringement of at least one claim of the '050 patent.

89.     Upon information and belief, the wire pullers which directly infringe one or more claims of the '050 patent, including but not necessarily limited to the Cannon 6K and 10K wire pullers, have no substantial non-infringing uses and are especially made or adapted for use in accordance with the '050 patent.

90.     Defendants' indirect infringement of the '050 patent has been and continues to be willful.

91.     Defendants' acts of indirect infringement have caused and will continue to cause damage to Southwire, and Southwire is entitled to recover from Defendants the damages sustained by Southwire and any additional remedy in an amount to be determined at trial.

92.     Southwire has suffered irreparable harm by Defendants' indirect infringement of the '050 patent and will continue to suffer irreparable harm in the future unless and until Defendants are enjoined from infringing the '050 patent.

93.     Upon information and belief, Defendants will continue to indirectly infringe the '050 patent unless and until Defendants are enjoined by this Court.

## COUNT VII
## (Past Trade Dress Infringement.)

94.     Southwire incorporates the allegations set forth in paragraphs 1-36 of this Complaint as if fully rewritten herein.

95.     Many of Southwire's products have a distinctive, non-functional trade dress.  As a specific example, Southwire's Marksman® layout tool has a distinctive, immediately recognizable and non-functional overall look that constitutes protectable trade dress that distinguishes Southwire's Marksman® layout tool from those of competitors.  The Marksman® layout tool has a distinctive rectangular shape, hole pattern, and overall design and layout of text and images:

17



96.    Southwire, and its predecessor Maxis Tools, have invested significant

time, money, and effort in developing its Marksman® layout tool, which has resulted

in significant commercial success and public recognition of its distinctive design,

appearance, and trade dress.  As a result of the use of the distinctive trade dress

shown above for almost a decade, customers and distributors recognize the

Marksman® layout tools as signifying a single source—Southwire.

97.    The distinctive trade dress features of the Southwire Marksman®

layout tool are non-functional and ornamental, do not impact the use, cost, or

quality of the layout tool, and together comprise a design that identifies the

Marksman® layout tool as originating from a single source.  The particular design,

appearance, and arrangement of these elements as a whole are also separate from

the utilitarian requirements to create a layout tool.

98.    The original iToolco Center Point layout tool copied the Marksman®

trade dress, misappropriating the distinctive, non-functional, source-identifying

18

features of Southwire's Marksman® product:

 

**Southwire Marksman**
**Conduit Spacer**

**Accused iToolco Center**
**Point Layout Tool**

99.     Defendants' manufacture and sale of its confusingly similar layout tool, which copies the distinctive and non-functional features of Southwire's Marksman® product, was likely to cause confusion or deception of, or mistakes made by, the purchasing public as to the source or origin of the layout tool in violation of 15 U.S.C. § 1125(a).  In addition, both the Southwire Marksman® and the original iToolco Center Point layout tool were sold in overlapping trade channels, which further exacerbated the likelihood of confusion between products.

100.     Defendants engaged in such wrongful conduct for the willful purpose of misleading, deceiving, or confusing customers and the public as to the origin and authority of the original iToolco Center Point tool, thereby trading on Southwire's goodwill, reputation, and creative designs.

101.     Defendants' conduct constituted willful infringement of Southwire's

19

protectable trade dress, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

102. Defendants' infringing activity has caused Southwire irreparable injury and monetary damages.

## COUNT VIII
### (Breach of Non-Solicitation Covenants)

103. Southwire incorporates the allegations set forth in paragraphs 1-36 of this Complaint as if fully rewritten herein.

104. As set forth above, the Jordan Brothers agreed not to compete with Southwire by engaging in certain prohibited conduct during the term of the Agreements.

105. Through the conduct described above, the Jordan Brothers have directly violated the non-solicitation covenants in their Agreements with Southwire, including by actively marketing iToolco products to Southwire's distributors.

106. By virtue of this conduct, the Jordan Brothers have breached at least paragraph 2 of their respective Agreements.

107. As a direct and proximate result of the Jordan Brothers' breach of the Agreements, Southwire has suffered, and is likely to continue to suffer, substantial injury, including lost business opportunities, lost profits, and damage to the goodwill associated with Southwire's customers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(a)     judgment in Plaintiff's favor on Counts I-VI that Defendants have

infringed the '273, '815, and '050 patents in violation of at least 35 U.S.C. § 271(a), (b), and/or (c);

(b)     an injunction against continued infringement of the '273, '815, and '050 patents (35 U.S.C. § 283);

(c)     an award of damages adequate to compensate Plaintiff for Defendants' infringement of the '273, '815, and '050 patents and past infringement of Plaintiff's trade dress, together with interest and costs as fixed by the Court (35 U.S.C. § 284 and 15 U.S.C. § 1117(a) and);

(d)     increased and treble damages for willful infringement (35 U.S.C. § 284 and 15 U.S.C. § 1117(b));

(e)     a finding that this is an exceptional case pursuant to 35 U.S.C. § 285 and 15 U.S.C. §1117(a);

(f)     its attorneys' fees pursuant to 35 U.S.C. § 285;

(g)     its costs (Fed. R. Civ. P. 54(d));

(h)     judgment in Plaintiffs' favor on Count VIII that the Jordan Brothers' actions constitute breach of their non-solicitation covenants;

(i)     an award of damages in an amount to be proven at trial to compensate Plaintiffs for the Jordans' breach of contract together with interest;

(j)     any other relief appropriate under the circumstances.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable in this action.

Respectfully Submitted,

HUNTER, SMITH & DAVIS, LLP


___/s/ Jimmie C. Miller_____
Jimmie C. Miller (No. 009756)
1212 North Eastman Road
Kingsport, TN  37664
(423) 378-8852 Phone
(423) 378-8801 Fax
jmiller@hsdlaw.com

OF COUNSEL:

Andrew M. Ollis (*pro hac* to be filed)
Tia D. Fenton (*pro hac* to be filed)
Lisa M. Mandrusiak (*pro hac* to be filed)
OBLON, McCLELLAND,
MAIER & NEUSTADT, LLP
1940 Duke St.
Alexandria, VA 22314
Tel.:  (703) 413-3000